PHILESTER LEE, Plaintiff, *v.* DANIEL SIMONDS, Defendant.

*Action of Right.—Adjourned into Supreme Court from the District Court of Linn.*

1. Residence must be determined from all the facts and circumstances in each particular case.
2. Courts have jurisdiction where one seeks to maintain and defend the possession of a claim against another; and, in such a case, the objection that plaintiff's claim is not in a "compact form," will not be entertained.

THIS suit is brought to recover possession of a certain tract of land in Linn County. The facts material to a decision of the case are as follows : Simonds took the claim in dispute in the fall of 1849 ; lived .on it the ensuing winter.; started for Illinois in the spring of 1850 ; said he was going after his family ; would bring one of his sons if his wife did not come ; would return if he lived ; left the claim in dispute in possession of Carroll as his agent ; small field on east side of it ; promised to write Carroll every opportunity, directing him how to manage claim ; told him not to sell it under two years ; if sold, proceeds to be applied to the support of schools. .Simonds also left another claim, or parcel of land, in the possession of Peterson. Carroll heard that Simonds, on his way to Illinois, left Portland sick ; heard that he died in California ; took the claim as his own ; took it because he was told, and believed, he could not hold it for another ; people threatened to jump it ; took it to keep it from being jumped ; worked on it ; did not live on it ; sold it to Lee in the fall of 1850 ; nothing said to him about Simonds ; sold it as his own ; sold it for $700 ; Lee paid him. Lee went on ; has resided on and cultivated it ever since. Simonds came back in the fall of 1851, put up his tent on the claim, went into it ; put up a house afterwards on claim ; lived in that ; has attempted to hold possession since. Somers claims land

between Lee's house and the tract in dispute. Suit between Somers and Lee about the possession of that land decided for Lee.

*Harding & Grover*, for plaintiff.

*Thornton*, for defendant.

WILLIAMS, C. J.    These facts show that Lee took possession of the land in dispute in the fall of 1850; but Simonds says that he was then "residing upon and cultivating" said land, and, therefore, Lee's possession was wrongful as against him.    Was Simonds residing upon and cultivating the land in dispute in the fall of 1850, within the meaning of the donation act? If he was there, his claim is prior in time and paramount in right to the claim of Lee, but if he was not, then Lee's possession, commencing in 1850, must be preferred to the possession of Simonds, commencing in 1851.    Simonds and his family were in the State of Illinois in the fall of 1850. Admitting that Simonds might be with his family in Illinois, and at the same time residing upon a claim in Oregon, yet considerable evidence is necessary to overcome the presumption that a man's residence, at any given time, is where he and his family are actually living at that time.    Confessedly, the family of Simonds were residing in Illinois in 1850, and had never been in Oregon; and, as a general rule, the residence or home of a man is where his family resides—though this is not always the case.    Simonds tries to establish his residence upon this claim in the fall of 1850, upon the naked fact that he lived there through the winter of '49 and '50; but if that fact of itself proves that he resided there at that time, then the fact that he was in Illinois through the winter of 1850 and '51, proves that he resided there at that time. "Personal presence in a place," says Chief-Justice Shaw, in *Sears* v. *Boston*, 1 *Met.* 250, "is one circumstance to determine the domicil, or the fact of being an inhabitant, but it is far from being conclusive." Simonds, it is true, said, when start-

ing for the States, that he was going after his family, and intended to return, if he lived; but if this goes far enough to prove a residence in Oregon, it falls far short of proving a residence upon the particular land in question.

There is no evidence in this case to show that Simonds said at any time that his residence was upon the land in dispute; that he ever declared or intended to put his family on it when they came to Oregon; that he ever made any improvements on it, or did any thing to make it a comfortable or permanent home for himself and family. When the claim came into the hands of Lee, there was a small field on it, but when or by whom made does not appear; it is probable that Simonds had a tent, cabin, or house on the claim to live in through the winter of 1849 and '50, but there is no direct evidence to this point. Doubtless Simonds was anxious to hold the claim until he returned from Illinois, but whether as a place of residence, or for purposes of speculation, cannot be determined from the testimony. Nothing in the case enables us to say whether Simonds, after his return from Illinois, intended to have his residence upon the claim in dispute, or upon the one left in Peterson's hands. Chief-Justice Shaw, in *Thorndyke* v. *Boston*, 1 *Met.* 242, very properly says: "No exact definition of domicil can be given; it depends upon no one fact, or combination of circumstances, but from the whole taken together it must be determined in each particular case." Whether a man resides upon a claim or not, at a particular time, is a question of fact to be decided from declarations, acts and circumstances of the person concerned, made and existing prior to, and at the time the controversy about his residence originates. Temporary absence by a settler from a claim, upon which he has established his residence, does not necessarily change or affect that residence, if it is in point of fact the home of the settler while away, and he looks to it, and treats it as his actual permanent home. Simonds, it is conceived, never had an actual home upon the claim in question. Lee's right, as against Simonds, is quite as good, if not better, than it would have been if Simonds, when he went to

Illinois, had not left the claim in the possession of Carroll. No one, by proxy, can make or continue such a residence upon the public lands of Oregon as the donation act contemplates, and therefore the possession of Carroll could have been of no avail to Simonds, as against third persons. Notwithstanding Carroll obtained the possession of this claim as agent, he could not hold it in that capacity, so as to make his possession in law answer for the possession of Simonds. Carroll's possession was his own to all intents and purposes, or it was no possession at all. Simonds transferred the possession of the land in question to Carroll in the spring of 1850. In the fall of the same year, Carroll sold and transferred the possession to Lee, so that Lee was not a disseizor, but a regular successor to Simonds in possession of the premises ; but it is said that Carroll was guilty of a breach of trust in selling the claim to Lee. Whether this be so or not, Lee, it seems, found Carroll in the actual possession of the claim, and for aught that appears, purchased it in good faith ; and having so purchased, he took the possession which Carroll received from Simonds, and holds it unaffected by any dispute between the two, as to their duties and obligations to each other.

Objection is made to the jurisdiction of the court in this matter, on the ground that it is a case of conflict of boundaries, and, pursuant to section six of the donation act, should be determined by the surveyor-general. One illustration will suffice to show the correct view of this question : A. and B. have adjoining claims, and a dispute as to the boundary line between them. Proceedings for the sole purpose of settling this dispute, while the land claimed by both is in common, must be had before the surveyor-general, and are not cognizable in the first instance by the courts. But if A. attempts to appropriate the disputed tract to his own exclusive use by enclosure, or otherwise, then B. may invoke the aid of the courts to maintain and defend his possession, and in the same way A. may protect himself against B. Such a procedure may incidentally involve a decision as to boundary ; but the courts, from the necessity of the case, must have this

power, otherwise the occupant of a claim might run his pretended boundaries around a neighbor's land, and thus obtain its use for years. This point is more fully discussed in the case of *Woodsides* v. *Rickey*, decided at this term.

Objection is also made to Lee's right of recovery, on the ground that his claim is not in a "compact form." Courts will not undertake to say whether a claim is in a compact form, or not, so as to change, or curtail possession, but leave that question to the exclusive jurisdiction of the land office. Compact form *is* a relative, and not an absolute requirement, for a claim taken under certain circumstances might be compact in form, and be entirely different in shape from a claim taken under other and different circumstances. Courts will not anticipate the government in deciding a question of this kind. Somers, it appears, claims the land lying between the house of Lee and the tract in dispute, and that contest, it is said, is still pending before the surveyor-general. Somers tried to dispossess Lee of the said lands by an action of forcible entry and detainer, and was defeated, and the record of that suit is in evidence here; so that thus far it seems Lee is in possession of the land in dispute between him and Somers, and has a right to the exclusive possession of the land in dispute between him and Simonds.

Judgment for plaintiff.